IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

RUSSELL T. NEAL,
    Plaintiff,

vs.                                                     Case No: 3:06cv4/LAC/EMT

JAMES SHEPPARD, et al.,
    Defendants.
_____/

**ORDER**

This cause is before the court on Plaintiff's amended civil rights complaint filed pursuant to 42 U.S.C. § 1983 (Doc. 8). Leave to proceed in forma pauperis has been granted (Doc. 5). From a review of the complaint, it is evident that the facts as presented fail to support a viable claim for relief under § 1983 as to one or all of the named Defendants. The court will therefore allow Plaintiff an opportunity to clarify his allegations in a second amended complaint.

Plaintiff is currently an inmate at Jefferson Correctional Institution (JCI). Plaintiff names three Defendants in this action, all of whom are medical personnel at the Walton Correctional Institution (WCI): Dr. James Sheppard, PA Chowuery, and Nurse Hogan (Doc. 8 at 1, 2).

Plaintiff alleges that on July 9, 2005, he was beaten by WCI officers, and Plaintiff's head and eye struck the edge of a thick wooden desk (*id.* at 8). After the beating, Plaintiff states that his forehead was visibly swollen for over sixty days, and the redness and pain in his eye is still present (*id.*). Plaintiff was previously diagnosed with glaucoma (*id.*). When Plaintiff reported to the first available sick-call day on July 11, 2005, nurses there "failed to examine [his] injury or to document the visible signs of the swelling, blood drainage, and pain, and listed only subjective elements of [his] complaint" (*id.*). Plaintiff states that Defendant Hogan "blamed the drainage on the floresent [sic] lights," and removed one type of eye medication while insisting he continue with another,

"even after [Plaintiff] told her it made [his] condition worse" (*id.*). In response, Defendant Hogan told Plaintiff he did not have eye irritation (*id.* at 8A). However, other inmates and officers had told Plaintiff his "eye was full of blood" (*id.*).

On July 16, 2005, Plaintiff was threatened by Officer Bill Cassiday, who told Plaintiff that Nurse Hogan told Cassiday that Plaintiff had reported being beaten by officers (*id.*). Despite his fear of the medical staff reporting to the officers, Plaintiff requested that he be allowed to see Dr. Tugwell, the eye doctor, who is generally available the first Wednesday of every month (*id.* at 8A–8B). Plaintiff reported to the nursing staff (Defendants Chowuery and Hogan, and Nurses Lovelace and Smith) that it was an emergency, and Plaintiff also asked to see Dr. Sheppard (*id.* at 8B). When Plaintiff saw Defendant Sheppard in September, Plaintiff "repeated all [his] symptoms and [his] concerns of inner ocular damage, even that [he] felt like [he] had a tumor behind [his] eye" (*id.*). Plaintiff also told Defendant Sheppard that despite using cold rags on his eye as well as taking Tylenol and Ibuprofen, Plaintiff "could not alleviate the swelling or pain" (*id.*). Defendant Sheppard only gave Plaintiff Ibuprofen, but "never looked in [his] eye or examined its movement, nor ordered a CT or optomalogist [sic] to examine soft tissue damage as [Plaintiff] requested" (*id.*). In addition, Plaintiff states that when he saw Dr. Sheppard, Plaintiff's hands were cuffed to his waist, and Defendant Sheppard was unable to check the range of motion on Plaintiff's torn rotator cuffs (*id.* at 8B–8C). Plaintiff had previously been given a "front cuff only pass," but Defendant Sheppard discontinued the pass without communicating that fact to Plaintiff (*id.* at 8C).

Plaintiff states that the damage to his eye was "visually apparent" and could be seen "by lay men from twenty feet away" (*id.* at 8E). "Even after fifty five days from the beating other inmates . . . accused [Plaintiff] of being punch drunk and/or of having brain damage. [Plaintiff's] speech was slurred and [his] thought patterns erratic" (*id.*). Despite this, Plaintiff alleges that he received inadequate medical care. Defendant Chowuery noted the swelling on Plaintiff's head and "only ordered an x ray with full knowledge that soft tissue injuries would not and could not be detected by such an exam" (*id.*). Defendant Hogan "stated she will only treat [Plaintiff] for [his] back, and not [his] eye pain" (*id.* at 8H). During the time that Plaintiff was in confinement, he wanted to declare a medical emergency four different times, but "the fear of further beatings, and the lack of concern for such or my condition" kept him from visiting the clinic (*id.* at 8F).

Case No: 3:06cv4/LAC/EMT

In addition to communicating his medical problems to Defendants Sheppard, Chowuery, and the RN nurse, Plaintiff reported the beating to them, but Plaintiff states that they did not file a report regarding excessive use of force (*id.* at 8D). Plaintiff states that "Nurse Hogan's sister is a CO on day shift in [his] dorm, (at that time) [and he] believe[s] that a conflict of interest exists where the medical staff is more concerned with whitewashing any charge or allegation of abuse than exposing their friends and/or family to the proper authorities" (*id.*). In fact, when Plaintiff returned to the general population from confinement, he "received daily harassment and threats by an expanded group of officers" (*id.* at 8I). Plaintiff alleges that Captain Godwin "contracted an Inmate" to assault Plaintiff on April 8, 2006. Plaintiff declared a medical emergency on April 9, 2006, but he received no treatment, and Captain Thompson placed Plaintiff in protective management "for [Plaintiff's] own safety" (*id.*).

Plaintiff has since transferred to JCI, where he has found that his "files in medical have been weeded out" (*id.*) On August 7, 2006, Nurse Wilson examined Plaintiff's medical records that had been sent from WCI to JCI (where Plaintiff is currently housed) (*id.* at 8D). Nurse Wilson "found [his] medical records deleted and lacking previous medical procedures that had been conducted and confirmed even by RMC Lake Butler" (*id.* at 8D–8E).

Plaintiff claims that Defendants violated the Eighth Amendment for their deliberate indifference to Plaintiff's serious medical need and their inadequate medical care where a specialist was available (*id*. at 9). As relief, Plaintiff seeks compensatory and punitive damages for loss of quality of life, permanent disability and disfigurement, future medical care, loss of future income, and future pain and suffering (*id.*). He also seeks "injunctive relief seeking additional staff and/or additional training" (*id.*).

Regarding the substance of his claims, Plaintiff has failed to state a constitutional claim for denial of medical treatment. Medical treatment violates the Eighth Amendment "only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991) (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Incidents of mere negligence or malpractice do not rise to the level of constitutional violations. *Id.* (citing Estelle v. Gamble, 429 U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976)). Similarly, a difference in medical opinion between the medical

staff and an inmate as to the inmate's diagnosis or course of medical treatment does not support a claim of cruel and unusual punishment. *Id.*

Stating an Eighth Amendment claim for inadequate medical care requires satisfying both an objective and subjective component. Taylor v. Adams, 221 F.3d 1254, 1257 (11th Cir. 2000). First, there must be conduct by prison officials which, objectively speaking, is "sufficiently serious" to constitute a deprivation "'denying the minimal civilized measure of life's necessities.'" *Id.* (quoting Wilson v. Seiter, 501 U.S. 294, 298, 111 S. Ct. 2321, 2324, 115 L. Ed. 2d 271 (1991)). Second, the prison officials must possess a subjective intent to use the medical deprivation as a means of punishment. *Id.*

Both the objective and subjective components encompass two subsidiary requirements. Taylor, 221 F.3d at 1258. As to the objective prong, an objectively serious deprivation requires showing an objectively "serious medical need." Estelle, 429 U.S. at 104. A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Hill v. DeKalb Reg'l Youth Det. Ctr., 40 F.3d 1176, 1186 (11th Cir. 1994), *abrogated on other grounds by* Hope v. Pelzer, 536 U.S. 730, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002); *see also* Farmer v. Brennan, 511 U.S. 825, 834, 114 S. Ct. 1970, 1977, 128 L. Ed. 2d 811 (1994) (serious medical need is one that, if left unattended, "pos[es] a substantial risk of serious harm"). In addition, an objectively serious deprivation requires showing the response made by Defendants to that need was so deficient as to constitute "an unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 105–06 (internal quotation marks omitted); *see* Taylor, 221 F.3d at 1257; *see also* Adams v. Poag, 61 F.3d 1537, 1543–44 (11th Cir. 1995).

To show the required subjective intent to punish, Plaintiff must demonstrate that Defendants acted with an attitude of "deliberate indifference." Estelle, 429 U.S. at 105. "Deliberate indifference has three components: (1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." Farrow v. West, 320 F.3d 1235, 1245–46 (11th Cir. 2003) (citing McElligott v. Foley, 182 F.3d 1248, 1255 (11th Cir. 1999); Taylor, 221 F.3d at 1258 (stating that defendant must have subjective awareness of an "objectively serious need" and that his response must constitute "an objectively insufficient response to that need").

Deliberate indifference must be more than a medical judgment call or an accidental or inadvertent failure to provide adequate medical care. Murrell v. Bennett, 615 F.2d 306, 310 n.4 (5th Cir. 1980).[1] A complete denial of readily available treatment for a serious medical condition constitutes deliberate indifference. Harris v. Coweta County, 21 F.3d 388, 393 (11th Cir. 1994). However, where the inmate has received medical treatment, and the dispute is over the adequacy of that treatment, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. Thigpen, 941 F.2d at 1507 (quoting Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989)). To do otherwise would be "to constitutionalize claims that sound in tort law." Hamm v. DeKalb County, 774 F.2d 1567, 1575 (11th Cir. 1985) (internal quotation omitted).

In the instant case, Plaintiff has failed to state an Eighth Amendment claim. Regarding the objective prong, Plaintiff claims that his medical care was inadequate. However, he alleges facts suggesting that he was indeed receiving medical care: he was given medications (although he alleges one was improper and another was taken away) and an x-ray; and he was seen by nurses, Dr. Sheppard, and an eye care specialist (Doc. 8 at 8G). These facts do not suggest that the response to Plaintiff's medical needs was so deficient as to constitute an unnecessary and wanton infliction of pain.

Next, Plaintiff has failed to allege sufficient facts showing that Defendants acted with deliberate indifference to his medical needs. Plaintiff has not alleged that he was completely denied any readily available treatment. Instead, Plaintiff has alleged differences in medical opinion between Plaintiff and the Defendants. For example, his allegation that Defendant Hogan gave him improper medication suggests the dispute involves the accuracy or appropriateness of the medical judgments made, not that Defendant Hogan disregarded a known risk of serious harm to Plaintiff. Similarly, Plaintiff admits that Defendant Chowuery ordered an x-ray and that Defendant Sheppard prescribed Ibuprofen, but Plaintiff disputes the appropriateness of those medical decisions. Even if Defendants committed medical malpractice, that does not constitute an Eighth Amendment

---

[1] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

violation. Unless sufficient facts exist and are alleged in an amended complaint, Plaintiff's Eighth Amendment claim will be subject to dismissal.

Finally, Plaintiff is not entitled to all of the relief he seeks. His claim for injunctive relief appears to be moot as he is no longer incarcerated at WCI.[2] *See* Spears v. Thigpen, 846 F.2d 1327, 1328 (11th Cir. 1988), *cert. denied*, 488 U.S. 1046, 109 S. Ct. 876, 102 L. Ed. 2d 999 (1989); Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985).

Plaintiff should carefully review the foregoing to determine whether he desires to proceed with this action. If Plaintiff determines that he does not, he should file with the court a notice of voluntary dismissal. If Plaintiff chooses to proceed with this action, he must completely fill out a new civil rights complaint form, marking it "**Second Amended Complaint**." Plaintiff must limit his allegations to claims related to the same basic incident or issue and name as Defendants only those persons who are responsible for the alleged constitutional violations. Plaintiff must place their names in the style of the case on the first page of the civil rights complaint form, and include their addresses and employment positions in the "Parties" section of the form. In the statement of facts, Plaintiff should clearly describe how each named Defendant is involved in each alleged constitutional violation, alleging the claims as to each Defendant in separately numbered paragraphs and including specific dates and times of the alleged unconstitutional acts. If Plaintiff cannot state exactly how a particular Defendant harmed him, he should delete or drop that person as a Defendant from his complaint. In the section entitled "Statement of Claim," Plaintiff must state what rights or statutes he contends have been violated, and he must provide support in the statement of facts for the claimed violations. Plaintiff's request for relief should be limited to only that which he could recover if he succeeds on his claims. Plaintiff is advised that the amended complaint must contain all of his allegations because once an amended complaint is filed, all earlier complaints and filings are disregarded. N.D. Fla. Loc. R. 15.1. Finally, Plaintiff is advised that he should not file copies of his amended complaint until ordered to do so by the court.

Accordingly, it is **ORDERED**:

---

[2]The court notes that Plaintiff filed a notice with the court indicating he has been transferred from WCI to JCI (*see* Doc. 7).

Case No: 3:06cv4/LAC/EMT

1.   The clerk of court is directed to forward to Plaintiff a civil rights complaint form for use by prisoners in actions under 42 U.S.C. §1983.  This case number should be written on the form.

2.   Within **THIRTY (30) DAYS** from the date of docketing of this order, Plaintiff shall file an amended civil rights complaint, which shall be typed or clearly written, submitted on the court form, and marked "Second Amended Complaint."  In the alternative, Plaintiff shall file a notice of voluntary dismissal within the same time period.

3.   Failure to comply with this order may result in dismissal of this action.

**DONE AND ORDERED** this 15th day of September 2006.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**